UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOURIOCKEIN VANN,<br><br>                              Plaintiff,<br><br>            -against-<br><br>DR. JANICE WOLFE-FRIEDMAN; DR.<br>MIKAIL GUSMAN; DR. YELENA<br>KOROBKOVA,<br><br>                              Defendants. | 23-CV-236 (LTS)<br><br>ORDER TO AMEND |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Sullivan Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights. By order dated February 3, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

### A.     Prior Litigation Against Dr. Wolfe-Friedman

The following summary of Plaintiff's factual allegations is drawn from the complaint and publicly available court records. On July 12, 2015, while Plaintiff was housed at Green Haven Correctional Facility, Corrections Officer Sudranski sexually assaulted him. (ECF 2 ¶ 3.) The following day, a doctor observed that the "injured area," around Plaintiff's groin area, was "swollen and irritated," and prescribed "pain killers" and scheduled Plaintiff for follow up care.

(*Id.* ¶ 4.) On at least ten occasions between July 19, 2015, and May 3, 2016, Plaintiff saw Dr.
Wolfe-Friedman, or tried to schedule an appointment with her, and Dr. Wolfe-Friedman either
did not see Plaintiff, failed to provide him with any treatment, or provided inadequate treatment.
(*Id.* ¶¶ 5, 14, 19, 20, 28, 33, 34, 37, 42.) Plaintiff also sought treatment from other medical
providers at Green Haven. (*Id.* ¶¶ 6-13, 15-18, 21-27, 29-32, 38-42, 53-60.)

On September 12, 2016, Plaintiff filed a lawsuit in this court in connection with
Sudranski's alleged assault and the denial of medical attention at Green Haven. *See Vann v.
Sudranski*, ECF 7:16-CV-7367, 1 (VB) (*Vann I*). On December 20, 2017, Judge Briccetti granted
a motion to dismiss Plaintiff's Eighth Amendment claims in *Vann I* against Dr. Wolfe-Friedman[2]
and two nurses, holding that: (1) the facts alleged suggested a disagreement with treatment rather
than a plausible claim of deliberate indifference to Plaintiff's serious medical needs; (2) although
chronic pain may constitute a serious medical condition, Plaintiff had failed to allege that the
medical treatment he received was inadequate, and thus his allegations of deliberate indifference
were conclusory; and (3) disagreement over the need for specialists or the timing of such
appointments was not a proper ground for a Section 1983 claim.[3] ECF 7:16-CV-7367, 64.

B.    **This Complaint**

Plaintiff filed this complaint, which is dated January 4, 2023, against Dr. Wolfe-
Friedman, who is now a doctor at Sullivan Correctional Facility, and two other Sullivan doctors,
Mikail Gusman and Yelena Korobkova. The following facts are drawn from the complaint.

---

[2] In *Vann I,* this defendant is referred to as Dr. Wolf-Friedman.

[3] After the assignment of *pro bono* counsel to Plaintiff, *Vann I* proceeded to trial against
Sudranski for the assault. On May 11, 2022, a jury returned a verdict in favor of Sudranski. ECF
253.

In 2016, Dr. Wolfe-Friedman started working at Sullivan Correctional Facility, and Plaintiff was transferred there in 2017. (*Id.* ¶¶ 52, 61.) Plaintiff complained about Dr. Wolfe-Friedman's failure to provide treatment to him at Green Haven, and because of his past experiences with Wolfe-Friedman, Plaintiff refused to see her a number of times, instead forgoing treatment if she was the only medical provider on duty at Sullivan. (*Id.* ¶¶ 61-73, 89, 111.) Dr. Wolfe-Friedman denied Plaintiff medical care, mostly for groin pain but also for other medical conditions,[4] harassed him, and was aggressive and confrontational towards him. (*Id.* ¶ 71.) Dr. Wolfe-Friedman conveyed a message to Plaintiff via a nurse practitioner that he would not be allowed to see any other medical provider but her. (*Id.* ¶ 63, 73.) On three other occasions between 2017 and 2019, nurse practitioners told Plaintiff that they were unable to provide Plaintiff with proper care because of Dr. Wolfe-Friedman. (*Id.* ¶¶ 79, 81, 92.) Plaintiff filed a complaint about Dr. Wolfe-Friedman with the Office of Special Investigation (OSI). Officials from OSI interviewed Plaintiff on January 11, 2018, but no action was taken. (*Id.* ¶ 82.)

The complaint contains the following allegations against Dr. Gusman: (1) on June 10, 2017, Plaintiff saw Dr. Gusman about "excruciating groin, perineum and testicle pain," and Dr. Gusman prescribed pain medication, requested an ultrasound, and performed a "colon-rectal examination," which made Plaintiff "feel very uncomfortable," because he thought it was

---

[4] Plaintiff cites specific dates on which he went to the medical clinic for pain to his groin, "perineum area," and pelvis, and "[n]o medical care or treatment was provided" — in 2017: September 1, October 26, November 2, and November 30; in 2018: February 27, April 15, May 22, June 26, August 17, September 10, September 21, November 26, December 20; in 2019: January 11, February 7, March 28, May 2, May 10, May 21, May 23, July 18, July 19 (also seeking glaucoma treatment), August 9 (also seeking information about missed podiatry and MRI appointments), August 23, September 3, September 5, and September 19 (*Id.* ¶¶ 74, 77, 78, 81, 87, 90, 94, 96, 104, 108, 110, 115, 116, 119, 122, 126, 130, 132, 133, 135, 136, 139. 140, 141, 142, 143). This pattern continued from October 21, 2019 through December 19, 2019. (*Id.* ¶¶ 145-154.)

"inappropriate"; (2) on September 2, 2017, Dr. Gusman did a rectal exam, and discovered that

Plaintiff had a swollen prostate; (3) on September 30, 2017, Dr. Gusman referred Plaintiff to a

urologist, but he left the appointment "without addressing" Plaintiff's questions and concerns;

(4) on December 21, 2019, while discussing Plaintiff's need for orthopedic boots, Dr. Gusman

was abrupt and rude, and said that the New York State Department of Corrections and

Community Supervision ("DOCCS") would not pay for the boots, although DOCCS had

provided them to Plaintiff since 1999; (5) Dr. Gusman refused to give Plaintiff a reasonable

accommodation for his groin pain, and denied Plaintiff's request either to be transported to

outside medical appointments by van instead of the "hub bus," which did not have cushioned

seats,[5] or for a cushion; and (6) as discussed below, in 2022, Plaintiff was denied outside

neurological treatment because of an inaccurate referral by Dr. Gusman. (*Id.* ¶¶ 66-68, 75, 76,

97, 110, 155, 157.)

The complaint contains the following allegations with respect to Dr. Korobkova: (1) on

February 12, 2019, Dr. Korobkova entered the examination room without Plaintiff's chart, asked

him what he was there for, and failed to provide Plaintiff with any medical treatment; (2) on May

7, 2019, Dr. Korobkova did not know that Plaintiff had come to see her to have his ears drained;

and (3) on November 18, 2019, Dr. Korobkova was hostile and argumentative towards Plaintiff,

and she would not discuss his need for orthopedic boots. (*Id.* ¶¶ 123, 129, 149.)

Following is a summary of Plaintiff's allegations regarding urological treatment. On

November 14, 2017, Plaintiff saw Dr. T. Stilletto, a urologist at Eastern Correctional Facility,

---

[5] Plaintiff often refused medical trips if he would be required to ride in a hub bus, which was painful for him because of the condition involving his groin and perineum. (*Id.* ¶¶ 97, 107, 109, 110, 114.) On January 17, 2019, Nurse Practitioner O'Connor arranged for Plaintiff to have a gel cushion to facilitate his trip on the hub bus. (*Id.* ¶ 120.)

who "put in" for a CAT scan of Plaintiff's groin and pelvis and prescribed medication, but there was "no mention of the possible polyps" in Plaintiff's rectum and groin and pelvic pain. (*Id.* ¶ 80.) On February 12, 2018, Plaintiff gave blood and urine samples at Sullivan, after which Dr. Wolfe-Friedman reviewed his laboratory results and said that everything was "normal," and that he did not require a follow up urology appointment. (*Id.* ¶¶ 85-86.) On July 27, 2018, Plaintiff again saw Dr. Stilletto, who performed a cystoscopy, and scheduled a follow up appointment for 5 days later. (*Id.* ¶ 101.) Plaintiff was kept in the infirmary overnight, discharged, and sent back to Sullivan, and was not sent back for the follow up appointment. (*Id.*)

Plaintiff refused to go to an outside urology appointment on September 11, 2018, to avoid a hub bus trip. (*Id.* ¶ 109.) It appears that Plaintiff saw a urologist on February 21, 2019. (*Id.* ¶¶ 124-126.) Plaintiff references a "post-surgery" appointment, but it is not clear what procedure was performed. (*Id.* ¶ 127.) On May 16, 2019, Plaintiff saw another urologist, Dr. Owens, at Fishkill. Plaintiff had to correct "misinformation" in the referral forms. (*Id.* ¶ 131.) Plaintiff requested a medical appointment the following day, apparently at Sullivan, but no treatment was provided. (*Id.*)

On September 15, 2022, Plaintiff was:

finally taken to see the neurologist, after numerous requests and attempts to correct the medical care needed for urethral stricture noted in his 2018 consult procedure noted by Dr. T. Stilletto noting such. Neurologist is given the wrong consult information to assist him in assessing Plaintiff, and has to phone Sullivan Correctional Facility and try and speak with the author of the consult (Dr. Gusman) and find out why Plaintiff was sent to him on something that Plaintiff didn't complaint about. To which Plaintiff adamantly told the neurologist at the appointment, he was there to hopefully address his urethral restriction problem. The neurologist attempted to straighten the matter out. Only to come to the Plaintiff again, and state the Plaintiff is correct and will have to come back at a later date to address the matter. No medical care or treatment provided to Plaintiff in violation of 10 N.Y.C.R.R. § 405.7(c)(2), (3), and (4).

(*Id.* ¶ 157.)

On December 6, 2019, Plaintiff saw a urologist at Green Haven. (*Id.* ¶ 152.) The urologist referred Plaintiff to see a neurologist and a back specialist. Plaintiff told the urologist that he had never complained about his back, but the urologist "still put in for both after listening to Plaintiff's complaints" about the Sudranski assault. (*Id.*)

Plaintiff further claims that he was denied treatment for glaucoma, foot conditions, asthma, and denied medication. According to Plaintiff: (1) he has not seen an eye doctor since "July/August 2021"; (2) he has been denied orthopedic footwear or "medical boots" and a podiatry consult; (3) Plaintiff has not been given a pulmonary function test; and (4) on August 7, 2018, Plaintiff's prescription for Flomax for groin pain, written by Dr. Gusman, was not refilled.[6] (*Id.* ¶¶ 95, 102, 137-139, 156.)

Plaintiff also alleges that on multiple occasions between 2017 and 2019, when he was sent to other correctional facilities to see specialists or for diagnostic screenings, he would discover that the information on the referral forms, including the nature of the diagnosis or treatment sought, was inaccurate, and he would end up being sent back to Sullivan without receiving the scheduled care. In addition to the medical trips already discussed, Plaintiff also refers to medical trips to Shawangunk and Coxsackie Correctional Facilities.

Plaintiff seeks: (1) money damages; (2) immediate medical appointments to see a urologist, neurologist, and eye doctor; (3) to be transported to medical appointments by a van rather than a hub bus (4) to be transported alone, and not with other prisoners, to minimize "undue excessive [travel] time"; (5) to be issued orthopedic boots and sneakers; and (6) to have his medical records retyped so as to be legible. (*Id.* at 17.)

---

[6] On August 10, 2018, an individual named Lucy screamed at Plaintiff for asking about his medication. (*Id.* ¶ 103.)

**DISCUSSION**

A.    **Deliberate Indifference**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To establish a Section 1983 claim for inadequate medical care under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, a plaintiff must show that correction officials were deliberately indifferent to the plaintiff's serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Caiozzo v. Koreman*, 581 F.3d 63, 69-72 (2d Cir. 2009).

Deliberate indifference is evaluated under a two-pronged test comprised of both objective and subjective components. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). The objective component of this standard requires that the alleged medical need be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain"). If a complaint alleges that treatment was provided but was inadequate, the seriousness inquiry is focused on the alleged inadequacy. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Where a prisoner's claim is based on delay in the provision of medical treatment, the relevant concern is not "the severity of the prisoner's underlying medical condition," but the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin*, 467 F.3d at 280)). That is, a plaintiff must show that the defendants knew of and disregarded an excessive risk to the inmate's health or safety by failing to take reasonable measures to avoid the harm. *Caiozzo*, 581 F.3d at 69. Under this standard, a challenge based on the inadvertent or negligent failure to provide adequate care does not raise a constitutional claim under either the Fourteenth Amendment or the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

The facts alleged in the complaint do not suggest that Defendants showed deliberate indifference by consciously disregarding a substantial risk of serious harm to Plaintiff. Plaintiff's allegations against Dr. Wolfe-Friedman are premised upon his experiencing chronic pain in his groin and the alleged failure to provide adequate or timely treatment or care, but he fails to allege facts showing that she knew of and disregarded an excessive risk to his health or safety with respect to the nature or timing of the treatment she provided to him.[7]

Plaintiff's allegations against Dr. Gusman and Dr. Korobkova likewise do not show that they deprived Plaintiff of essential or adequate medical treatment. Instead, Plaintiff describes them both as being unprepared, short, or hostile during his medical appointments with them. Plaintiff further claims that Dr. Gusman performed an examination that made Plaintiff feel uncomfortable because he thought it was unnecessary, and conveyed inaccurate information in medical referrals to outside facilities. At best, these allegations could arguably state a claim of

---

[7] Plaintiff's allegations against Dr. Wolfe-Friedman in this complaint are similar to those he raised in the matter before Judge Briccetti. ECF 7:16-CV-7367, 64.

negligence, which does not rise to the level of a constitutional violation. It is also noteworthy that Plaintiff acknowledges repeatedly declining medical attention, even if he believes he had valid reasons for doing so.

In light of Plaintiff's *pro se* status, the Court grants him leave to amend his claim against all three Defendants to assert any facts demonstrating that any of the three exhibited deliberate indifference to Plaintiff's serious medical conditions.

**B.     Statute of Limitations**

The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).[8]

Plaintiff's Eighth Amendment claims against Defendants Wolfe-Friedman, Gusman, and Korobkova arising before January 4, 2020, appear to be time-barred. As Plaintiff delivered his complaint to prison authorities for mailing on January 4, 2023, any claim that arose before January 4, 2020 is presumably untimely. *See Walker v. Jastremski*, 430 F.3d 560, 562-64 (2d Cir.

---

[8] The continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York,* 186 F.3d 243, 248 (2d Cir.1999). The doctrine applies "not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citations omitted) (holding that where the continuing violation doctrine applies, the limitations period begins to run when the defendant has "engaged in enough activity to make out an actionable . . . claim"). "The mere fact that the effects . . . are continuing does not make [the] act itself a continuing one." *Id.* at 222.

2005) (discussing prison mailbox rule, under which the date a prisoner signs a court submission qualifies as the filing date).

The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. In addition, New York law provides that where a person "is under a disability because of . . . insanity at the time the cause of action accrues," the applicable statute of limitations will be tolled. N.Y. C.P.L.R. § 208; *Gardner v. Wansart*, No. 05-CV-3351, 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 25, 2006) (although mental illness is on its own insufficient for equitable tolling purposes, tolling is appropriate if a plaintiff is insane at the time the cause of action accrues and is "unable to protect [his] legal rights because of an overall inability to function in society").

Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks and citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on

11

statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

There are no facts in the complaint suggesting that the statute of limitations should be equitably tolled in this case. Because the Court has granted Plaintiff leave to assert any facts indicating that Defendants showed deliberate indifference to Plaintiff's serious medical needs, the Court also grants him leave to address the timeliness of his claims.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid Eighth Amendment medical claim, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider

in deciding whether the amended complaint states a claim for relief. That information should include:

a)  the names and titles of all relevant people;

b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c)  a description of the injuries Plaintiff suffered; and

d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

Plaintiff may consult the legal clinic opened in this District to assist people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court (and, among other things, therefore cannot accept filings on behalf of the Court, which must still be made by any *pro se* party through the Pro Se Intake Unit).

To receive limited-scope assistance from the Clinic, Plaintiff may mail a signed retainer and intake papers to the NYLAG Pro Se Clinic at 100 Pearl Street, 19th floor, NY, NY 10004. Once the paperwork is received, the Clinic will coordinate contact with Plaintiff. Once received, it may take up to two weeks for the Clinic to contact Plaintiff. The Clinic's retainer and intake paperwork are attached to this order.

**CONCLUSION**

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 23-CV-236 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:    March 6, 2023
          New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.

-against-

_____

_____

_____
Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
    ☐ Yes     ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                     Middle Initial                     Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                                     State                          Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

**NYLAG**
New York | Legal Assistance Group

Revised 10/30/22

**Name** _____   **Date of Birth** _____

**Facility** _____

**Identification #** _____   **Email (if available)**_____

**How did you hear about our clinic? (Circle One)**

| | | |
|---|---|---|
| Pro Se Intake Office | Order/Letter from the Judge | Conference/Hearing with the Judge |
| Pro Se Information Package | Website | Friend/Family |
| Other _____ | | |

**Ethnicity (Circle One)**

| | | |
|---|---|---|
| Asian/Pacific Islander | Hispanic | Caucasian |
| African American | Middle Eastern | Decline to Answer |
| African | Caribbean | |
| Native American | South Asian | |

**Education Level (Circle One)**

| | | |
|---|---|---|
| 8th Grade or Less | GED | 2-4 years of College/Vocational School |
| Some high school | College graduate | Decline to Answer |
| High school graduate | Graduate degree | |

**Gender:** _____

**SDNY Case Number:** _____

**Once you have completed this form, please mail it and the completed retainer to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**

Revised 10/30/22

# NYLAG
### New York   Legal Assistance Group

## LEGAL CLINIC FOR PRO SE LITIGANTS IN THE
## SOUTHERN DISTRICT OF NEW YORK

### LIMITED SCOPE LEGAL ASSISTANCE RETAINER AGREEMENT

You retain the New York Legal Assistance Group (NYLAG) to provide you with limited scope legal assistance through its Legal Clinic for Pro Se Litigants in the Southern District of New York (Clinic) under the terms set forth below.

### I.  LIMITS OF ASSISTANCE

The Clinic agrees to provide only limited scope legal assistance in connection with your matter.

This means that:

- You remain a self-represented (pro se) litigant and are responsible for all aspects of your case. NYLAG is not your attorney of record in this matter. In the event that you are or become a party to a case in the Southern District of New York or any other forum, NYLAG will not enter an appearance or otherwise act on your behalf without expressly agreeing to do so and entering into a separate signed agreement with you. NYLAG has no obligation to enter into any such agreement.

- NYLAG has sole discretion to determine the specific type of services provided. These services may include providing advice and counsel about your case, explaining court orders and procedures, reviewing and commenting on your drafts, assisting with drafting, and discussing strategy.

- This retainer covers an initial consultation only. NYLAG can stop assisting you with this matter at any time for any reason consistent with the New York Rules of Professional Conduct.

- NYLAG has not agreed to represent or assist you on any other matter in the future.  If NYLAG does agree to any representation on another matter, then a separate signed retainer agreement will be necessary.

- You may request but are not guaranteed subsequent appointments. NYLAG will only provide assistance on subsequent appointments if it provides you with confirmation to you of such assistance, via email or otherwise, with such additional assistance governed by the terms of this agreement, including that the assistance is for that consultation only and that NYLAG has sole discretion to decide whether it will provide any additional future consultations. You are responsible for and must meet all deadlines in your case, regardless of whether you are able to have an appointment with the Clinic.

### II.  FREE ASSISTANCE, NON-ATTORNEY PROVIDERS, AND COMPETENCY

NYLAG does not charge for this assistance.  You may be assisted by law students and/or paralegals under the supervision of an attorney consistent with the Rules of Professional Responsibility.  NYLAG's assistance does not guarantee success or any particular outcome but that NYLAG will provide competent assistance.

### III. TERMINATION OF ASSISTANCE

Your participation is entirely voluntary, and you are free to stop receiving NYLAG's limited scope assistance at any time.  NYLAG may stop providing limited assistance at its sole discretion consistent with the New York Rules of Professional Conduct. If NYLAG chooses to stop providing limited assistance, it will provide notice by email, mail, or phone.

### IV. CONFIDENTIALITY

NYLAG will take all reasonable steps to maintain any information you provide as confidential.

### V.  REVIEW AND CONSENT

By signing and writing today's date below, you indicate that you: have read and understand this agreement; consent to the terms of this agreement; and understand the possible risks and benefits of proceeding with limited scope assistance.

If you have questions or concerns, please indicate on this form and someone will arrange to speak with you.


_____                    _____
Signature                                           Date




**Once you have completed this form, please mail it and the completed demographic form to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Incarcerated Civil Litigants in Federal District Court

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys, law students, and paralegals to assist those who are representing themselves or planning to represent themselves, including incarcerated litigants, in civil lawsuits in the Southern District of New York federal court, excluding habeas cases. The clinic is not part of or run by the court.

Even if a litigant has consulted with Clinic staff, unless they retain other counsel and that counsel enters a notice of appearance, they remain unrepresented; are responsible for doing whatever is necessary in connection with the case; and must still submit all court papers to the Pro Se Intake Unit, located in Room 105 of the Daniel Patrick Moynihan Courthouse, 40 Foley Square, New York, New York, or by following the court's instructions for filing via email as a pro se litigant.

## The Clinic Can:

- Assist with amending complaints and responding to motions to dismiss;
- Represent litigants for settlement purposes and, in limited circumstances, for depositions;
- Assist with written discovery;
- Recruit pro bono counsel for depositions and trial; and
- Assist with oppositions to summary judgment.

***Clinic staff cannot assist with habeas cases or criminal matters.***

NYLAG may also be unable to assist if it determines, in its professional legal judgement, that (i) you have refused to cooperate with the Clinic's counsel or follow the Clinic's advice; (ii) any assistance would be unreasonably difficult for NYLAG to carry out; or (iii) your case is or will become frivolous, unreasonable, groundless, or without merit.

## Contacting the Clinic:

To contact the clinic and request a copy of our retainer, please call (212) 659-6190 and leave a message or write to us at the following address:

> NYLAG Legal Clinic for Pro Se Litigants
> Thurgood Marshall Federal Courthouse
> Room LL22
> 40 Centre Street
> New York, NY 10007

Please mail a signed retainer back to the clinic at the above address. Once the paperwork is received, clinic staff will contact you. It may take up to two weeks.

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.

